# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

PLANET HOLLYWOOD  
INTERNATIONAL, INC. n/k/a  
PB RESTAURANTS, LLC,

    *Plaintiff,*

v.

ZURICH AMERICAN  
INSURANCE COMPANY,

    *Defendant.*

CASE NO.:

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, PLANET HOLLYWOOD INTERNATIONAL, INC. n/k/a PB RESTAURANTS, LLC, ("Planet Hollywood"), sues Defendant, ZURICH AMERICAN INSURANCE COMPANY ("Zurich"), and alleges:

1. Is there a risk that a global pandemic would lead to government action that would close restaurants nationwide? Is there a risk that a public decision to protect and marshal healthcare resources would lead to the closure of in-person access to restaurants, and the prohibition of access and patronage to eating establishments, nationwide? Is there a risk that a global pandemic and resulting public action would result in the loss of business income? Although all these risks may be remote, the year 2020 taught that these risks exist. How should a responsible business owner respond to these risks? One method is through the purchase of an "all risks" insurance policy. Finally, if a business

owner has such a policy, and one of these risks comes to pass, should the insurer pay?

### A. NATURE OF THE ACTION

2. Plaintiff, Planet Hollywood, operates and franchises restaurants worldwide, with a global portfolio of locations. As an industry leader, known for providing a unique Hollywood experience with high-quality food and entertainment, franchise opportunities in tourist locations and other high-traffic venues, Planet Hollywood's enterprise expanded to include more than 200 restaurants in the United States, with additional locations world-wide, including brands such as Buca di Beppo, Bertucci's, Brio, Bravo!, Earl of Sandwich, Chicken Guy!, and others. Planet Hollywood has enjoyed a longstanding reputation and track record for running outstanding operations for its uniquely multi-branded concepts. Planet Hollywood's years of success, however, have become imperiled by the nation's public healthcare response to marshal public resources to manage through a pandemic (the "Pandemic").

3. Various state and local governments have enacted or adopted a series of legislative acts or executive orders ("Government Directives") directing the complete or partial closure of certain "nonessential" businesses to curb the proliferation and pace of the Pandemic—creating a virtual "fire break"—to better enable the public healthcare system to manage through the crisis. The "fire break" applied to consumers (*e.g.*, "you can't go to restaurants") and to businesses (*e.g.*, "you can't serve customers at your restaurant"). These preemptive closures, in theory, would slow (but not eradicate) the spread of the

Pandemic enough—a strategy generally described as "flattening the curve"[1]—such that society could avoid "demand shocks," thus allowing society to bear the burden of tending to the public healthcare needs of the population in a measured or controlled manner. This strategy focuses more on the utilization of available public resources, than averting or minimizing damage to a particular business. In fact, the strategy accomplishes the opposite—allowing certain businesses such as Planet Hollywood's to be destroyed for the "greater good." By closing all nonessential business properties, so the strategy dictates, the spread of the Pandemic would be slowed enough such that the public healthcare infrastructure would not become overwhelmed.

4.      These public healthcare initiatives heed little to the needs of the individuals or their businesses. Rather, the closed businesses become intended casualties to further the perceived public interests. Planet Hollywood, as have countless other business operators and owners, has suffered as a result. Even though Planet Hollywood has experienced little or no actual contamination from the spread of the Pandemic, it has suffered the loss of property (loss of business, and loss of function) resulting in catastrophic financial losses caused by the state and local government closure orders of many of the business properties owned or operated (hereinafter, the "Properties") by Planet Hollywood. As an example, Planet Hollywood attaches a compendium of many of its Properties (in the United

---

[1]     In epidemiology, the idea of slowing a pandemic's spread so that fewer people need to seek treatment at any given time is known as "flattening the curve." Through this public healthcare resource management strategy, society can better manage its resources to deal with a public health threat.

States) and relevant Government Directives as **Exhibit "A."** The "curve" may have been "flattened," but so too was Planet Hollywood's business. Over the past few months, Planet Hollywood's locations have been forced to close. These closures were ordered by state and local governments across the United States which required Planet Hollywood and its employees, customers, suppliers, and others to stay at home, and abide by strict social distancing guidelines. These forced closures resulted in an immediate loss of business income for Planet Hollywood, forcing layoffs and furloughs of its employees.

5. Individuals and their businesses, however, can insure against such unexpected eventualities by acquiring "all risk" insurance policies which insure against business interruptions like this. Planet Hollywood did exactly that by working with its insurance broker, Willis Towers Watson, to acquire a comprehensive "all risk" insurance policy from Zurich (the "Policy").

6. Despite having procured insurance from Zurich to insure against, among other things, coverage for losses due to the interruption of its operations, including when government orders businesses to close as a preemptive measure to slow the spread of a Pandemic, Zurich, in blatant breach of its "all risk" insurance obligations, has denied Planet Hollywood's claim and has failed and refused to provide coverage, resulting in tens of millions of dollars in damage.

7. As a result, Planet Hollywood brings this action against Zurich for its failure to honor its contractual insurance obligations. After Planet Hollywood dutifully paid premiums to Zurich for an "all risk" coverage insurance policy, when the government closures started to implement the societal "fire break"

strategy, Zurich forsook its contractual commitment to Planet Hollywood in its hour of dire financial need.

## B. THE PARTIES

8. Plaintiff, Planet Hollywood, organized as a Delaware limited liability company, with its principal place of business in Florida.

9. Zurich, organized as an Illinois corporation, with its principal place of business at 1299 Zurich Way, Schaumburg, Illinois 60196-1056, and registered as a foreign entity permitted to do business in the State of Florida.

10. Zurich, an insurance company, writes insurance policies and does business in the State of Florida.

## C. JURISDICTION AND VENUE

11. This Court has jurisdiction over this action under to 28 U.S.C. § 1332, because the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

12. Under 28 U.S.C. § 1391 (b)(2), venue is proper in this district because a substantial portion of the events or omissions giving rise to Planet Hollywood's claim occurred in this district. Zurich denied coverage for over twenty-two (22) of the Planet Hollywood's restaurants located in Florida, including numerous restaurants in the Middle District of Florida.

## D. BACKGROUND

13. On or about July 1, 2019, Zurich issued the Policy (Policy No. PPR 5761517-06) to Planet Hollywood for the policy period of July 1, 2019, to July 1, 2020, The Zurich Edge – Global, including Property Damage, Loss Insured and

Time Element Coverages. Planet Hollywood attaches a true and correct copy of the Policy as **Exhibit "B."** Planet Hollywood has performed all its obligations under the Policy, including paying premiums. The Covered Property described in the Policy included restaurants and eating establishments across the United States (including Florida) listed on a Schedule of Locations on file with Zurich.

14. As an "all-risk" policy, the Policy issued by Zurich covered all risks of loss, imaginable or unimaginable, except for risks expressly and specifically excluded.

15. All-risk policies, such as the Policy at issue, insure against **ALL** losses, whether fortuitous or otherwise, even if not contemplated by the policy. To exclude risks from coverage, the insurers must clearly and specifically exclude those risks in writing.

16. The Policy lists a series of terms, definitions, and covenants, many of which are ambiguous, to describe coverage which would include coverage for the risks of the losses suffered by Planet Hollywood from the closure of its locations. The Policy, in pertinent part, stated:

   a. Zurich insures against "*direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property, at an Insured Location…*" (Edge-D-101-B (12/10) Section 1.01, p. 2 D (bold in original));

   b. Zurich defined "Covered Cause of Loss" as *"All risks of direct physical loss of or damage from any cause unless excluded."* (Edge-D-101-B (12/10) Section 7.11 p. 43);

      c.      The Policy did not define the term "RISKS"; accordingly, this term should be reasonably interpreted to mean the mere possibility that something unpleasant or unwelcome will happen, or as stated in the plain language of dictionary usage, the, *"possibility of loss or injury"*[2];

      d.      Nor did the Policy define "DIRECT PHYSICAL LOSS"; accordingly, to be consistent with the coverage stated and provided in Section 1.01 of the Policy, this phrase should be reasonably interpreted to mean the loss of access to or loss of the ability to generate income from property;

      e.      Logically, "DIRECT PHYSICAL LOSS" cannot equate to "DIRECT PHYSICAL DAMAGE," because otherwise the policy would have meaningless or redundant verbiage; logically, if a building were simply removed from its physical location, the insured would have suffered a "LOSS"; as stated above, practically, reasonably, and to have meaning, "DIRECT PHYSICAL LOSS" means loss of access to or loss of the ability to generate income from the insured business property;

      f.      The Policy expressly provided enhanced coverage as Time Element Loss Insured: *"The Company will pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary* **Suspension** *of the Insured's business activities at an Insured Location. The* **Suspension** *must be due to direct physical loss of or damage to Property (of the*

---

[2] *See* MERRIAM-WEBSTER, "risk," https://www.merriam-webster.com/dictionary/risk (last visited March 12, 2021).

*type insurable under this Policy other than **Finished Stock**) caused by a **Covered Cause of Loss**…"* (Edge-D-101-B (12/10) Section 4.01 p. 6 (bold in original));

      g.    Planet Hollywood's Policy includes the loss of Gross Earnings under Time Element Coverage;

      h.    The Policy defines *"Gross Earnings loss as "the actual loss sustained by the Insured during the Period of Liability."* (Edge-D-101-B (12/10) Section 4.02.01.01 p. 6-7);

      i.    The "Period of Liability" applies to all Time Element Coverages for building and equipment and starts *"from the time of physical loss or damage of the type insured against and ending when with due diligence and dispatch the building and equipment could be repaired or replaced, and made ready for operations under the same or equivalent physical and operating conditions that existed prior to the damage."* (Edge-D-101-B (12/10) Section 4.03.01.01 p. 10);

      j.    The Zurich Policy also affords coverage for the actual Time Element loss sustained by the Insured at other Insured locations. The Time Element loss must result from necessary Suspension of the Insured's business activities at the other Insured Locations. Such other Location must depend on the continuation of business activities at the Location that sustained direct physical loss or damage caused by a Covered Cause of Loss. (Edge-D-101-B (12/10) Section 4.01 p. 6).

      k.    Recovery is afforded Planet Hollywood under the Zurich Policy to the extent that Planet Hollywood was unable to make up lost production within a reasonable period of time, unable to continue such operations or

services during the Period of Liability and able to demonstrate a loss of revenue for the operations, services or production Suspended.

17. Planet Hollywood's Policy includes coverage for the loss of Gross Earnings under the Time Element coverage section of the Policy. The Pandemic, and the associated "fire-break" strategy implemented by the respective governmental entities through the Government Directives, resulted in the partial or complete shutdown or suspension of Planet Hollywood's businesses. That is, Planet Hollywood was unable to generate business income because customers were precluded from accessing Planet Hollywood's restaurant locations, and Planet Hollywood was precluded from serving customers at its restaurant locations.

18. The Policy *did not* exclude or limit coverage for losses from public closures to marshal public healthcare resources. That is, Zurich did not exclude or limit coverage for losses based on public healthcare emergency closures—including those arising from or necessitated by pandemics—in Planet Hollywood's policy coverage.

19. The Policy likewise did not exclude or limit coverage for widespread losses attributed to a societal "fire break" strategy implemented through Government Directives.

20. Losses due to the Pandemic, including the loss of Gross Earnings, are Covered Causes of Loss under Zurich's Policy because the RISKS of pandemics are not specifically and clearly excluded from the Policy's all-risk coverage.

21. Losses due to the Government Directives (the various public health emergency closure orders), including the loss of business income such as Gross Earnings, are also Covered Causes of Loss under Zurich's Policy because the RISKS of public healthcare emergency orders are not specifically and clearly excluded from the Policy's all-risk coverage.

### E. IMPACT OF THE PANDEMIC AND PUBLIC HEALTHCARE EMERGENCY CLOSURES

22. On March 11, 2020, the World Health Organization (the "WHO") declared the emergence of a global pandemic (defined above as the "Pandemic").

23. To fight the spread of the Pandemic, governmental authorities across the United States issued orders closing "nonessential" businesses, including restaurants, malls, hotels, theaters, gyms, and schools, issued orders mandating strict social distances among the population, and issued stay-at-home orders (defined above as the "Government Directives").

24. As a result of the Pandemic-induced Government Directives, Planet Hollywood was forced to temporarily close its businesses commencing on or about March 13, 2020, causing Planet Hollywood to lose access to and to lose the ability to generate income from its restaurant properties and premises.

25. As a result of the Pandemic-induced Government Directives, numerous properties operated by others on which Planet Hollywood depended for the acceptance of products and services (customer recipient locations), for the manufacture of products (food products and the like), and for the attraction of customers (such as tourist locations) were partially or completely shut down.

26. Being forced to close its businesses and suspend its operations, Planet Hollywood suffered direct physical losses caused by the Pandemic-induced Government Directives, which triggered the Time Element provisions of Zurich's Policy.

27. Planet Hollywood suffered loss of business income that it reasonably would have expected to earn, but for the unforeseen Pandemic-induced Government Directives, including the mandatory government shutdown and suspension of its businesses required by various closure orders.

28. The government's "fire break" strategy implemented to marshal public healthcare resources concluded that nonessential premises for public use, such as restaurants like Planet Hollywood's, should be closed to marshal public healthcare resources and to stem the Pandemic. The resulting Government Directives required Planet Hollywood to temporarily close its businesses across the United States, and globally, causing Planet Hollywood a direct physical loss of Insured Locations (as described herein) further resulting in a loss of business income.

29. The resulting Government Directives prohibited gatherings, and required social distancing, prohibited restaurants' on-site service, prohibited any dining within the premises; and limited any restaurant service to off-site use. Some selected examples include:

    a. Florida Executive Order No. 20-68 required all restaurants to provide delivery, carry-out or curbside service and prohibited social gatherings in public places;

      b.      New Jersey Executive Order EO-107 prohibited restaurant dine in service.

      c.      Washington Order 20-25 prohibited social gatherings;

      d.      Texas Executive Order GA-14 ordered the public to avoid eating and drinking at restaurants and food courts;

      e.      Tennessee Executive Order No. 22 prohibited dining in restaurants; and

      f.      Maryland Executive Order 20-03-30-01 closed bars and restaurants to service except for carry-out service only.

These and other Government Directives (*see* **Exhibit "A"**) prohibited access to and use of Planet Hollywood's Insured Locations, and the areas surrounding the property.

30.    The State of Florida and other state and local leaders have issued and continue to issue authoritative orders governing businesses, including Planet Hollywood's businesses, in response to the Pandemic, the effects of which have required and continue to require Planet Hollywood to stop and significantly diminish its operations, and that have prohibited and continue to prohibit access to the Insured Locations.

31.    The Pandemic-induced Government Directives have caused and continue to cause loss of or damage to property, including Planet Hollywood's Property insured under the Policy, principally in the form of Time Element losses, which include Gross Earnings.

**F.  PLANET HOLLYWOOD'S CLAIM FOR LOSSES DENIED BY ZURICH**

32.  Zurich covers all RISKS of direct physical loss under Planet Hollywood's all risk insurance policy.

33.  Zurich provides coverage for the loss of business income (Gross Earnings) under Section IV - Time Element 4.01. Loss Insured section of the Policy. *"The Company will pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary Suspension of the Insured's business activities at an Insured Location. The Suspension must be due to direct physical loss of or damage to Property (of the type insurable under this Policy other than Finished Stock) caused by a Covered Cause of Loss at the Location, or as provided in Off Premises Storage for Property Under Construction Coverages."*

34.  The Government Directives issued to implement the "fire break" strategy resulted in the partial or complete closure of Planet Hollywood's business which constituted a covered risk. The Policy contains no applicable exclusions barring coverage of Planet Hollywood's Claim.

35.  Planet Hollywood timely submitted a claim (in which Planet Hollywood placed a claim under any and all applicable policy coverage) for business income loss under its Policy to Zurich (the "Claim"), but Zurich denied the Claim. A true and correct copy of Planet Hollywood's claim is attached hereto as **Exhibit "C."**

36.  Zurich acknowledged receipt of the Claim on March 17, 2020. On July 10, 2020, Zurich sent a denial letter to Planet Hollywood International

ostensibly denying coverage for the losses sustained because of the public healthcare emergency closure orders ("Denial Letter"). A true and correct copy of Zurich's Denial Letter is attached hereto as **Exhibit "D."**

37. Zurich denied Planet Hollywood's Claim on two specific grounds.

38. **First**, Zurich denied coverage under the "Civil or Military Authority" portion of the Policy. (*See* Denial Letter, p. 1.)

39. Zurich denied "Civil or Military Authority" coverage and asserted: "The presence of the COVID-19 virus does not constitute "direct physical loss or damage" to property, and, in any event, it does not appear that the order of civil authority affecting Planet Hollywood International, Inc. resulted from any direct physical loss or damage within the distance limit of one (1) mile…"

40. However, in its denial letter, Zurich did not define "physical loss" or "damage" any more than it had in the Policy. Had Zurich intended to limit coverage to specific or narrow instances it could have clearly provided limiting definitions for the terms and phrases in the Policy, removing any ambiguity of the policy terms (specifically regarding loss of access to or loss of the ability to generate income from its restaurant properties and premises because of the risks described herein).

41. Courts in various jurisdictions have used numerous reasonable interpretations of the terms *"direct physical loss."* Common usage of these terms dictates that ouster and prohibition/interdiction of access and use by insured's agents, employees, and customers constitute physical losses. The ouster and

prohibition of access and use by all nonessential people results directly in a physical loss.

42. According to common English, "physical" can be defined as relating to "material things" that are *"perceptible especially through the senses."*[3] It can also be defined as *"of or relating to the body."*[4] Another dictionary defines the concept of physical this way: *"of or relating to natural or material things as opposed to things mental, moral, spiritual or imaginary."*[5]

43. Similarly, "loss" can be defined as *"the act of losing possession: DEPRIVATION such as the loss of sight."*[6]

44. However, whether or not "Civil or Military Authority" coverage itself exists or applies, Planet Hollywood has suffered a direct physical loss under the plain and ordinary meaning of the terms "direct physical loss" resulting from the Pandemic and various Government Directives that forced Planet Hollywood to be deprived of its physical property, which further directly resulted in the loss of business income.

45. **Second**, Zurich denied coverage to Planet Hollywood asserting the Policy excluded Planet Hollywood's loss as being due to *"**Contamination**, and any cost due to **Contamination**, including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as*

---

[3] *See* MERRIAM-WEBSTER, "physical," https://www.merriam-webster.com/dictionary/physical (last visited March 12, 2021).
[4] *See id.*
[5] *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED, "physical" (2020).
[6] *See* MERRIAM-WEBSTER, "loss," https://www.merriam-webster.com/dictionary/loss (last visited March 12, 2021).

*provided by the Radioactive Contamination Coverage of this Policy."* Zurich further defined Contamination as *"Any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen, or pathogenic organism, bacteria, virus, disease causing or illness causing agent, **Fungus** or **Spores**."* (*See* Denial Letter, p. 2.) *A priori*, the existence of this exclusion indicates that the "all risk" policy would cover losses suffered resulting from these risks, if not for the exclusion.

46. As such, Zurich claimed the presence of the COVID-19 virus falls within the definition of **Contamination.** However, Planet Hollywood did not claim there was any *actual presence* of the virus. (*See* Claim.) The definition of Contamination in the Policy does not preclude coverage of Planet Hollywood's Claim.

47. In addition, given the heterogenous items included within the definition of Contaminant, and Contamination, it is difficult to believe Zurich's intent was to include a global pandemic (which would have no "actual presence" in a location). Moreover, virus is not even included in the definition of Contaminant but is solely included in the definition of Contamination. The very definition is ambiguous when used in the context of the exclusion.[7]

48. Planet Hollywood did not claim any loss due to the actual presence of contamination or contaminant. Rather, Planet Hollywood sustained, and thus

---

[7] Notably, the Policy contains an Amendatory Endorsement – Louisiana (EDGE-219-C) that further narrows the scope of the definition of Contamination, and which purportedly modifies the "Policy."

claimed, a loss due to the Government Directives which required Planet Hollywood to shut-down its businesses across the United States.

49. The Policy contains no exclusions for public health emergencies or government closure orders, and no exclusions for worldwide pandemics. No exclusions in the Policy exclude coverage for such eventualities.

50. As the master of the Policy language, Zurich took great pains to carefully articulate events excluded from coverage. For example, Zurich's Policy excludes certain causes of loss such as water leakage, seepage, earth movement, hurricanes in specific areas, and terrorism.

51. However, Zurich's Policy does not mention governmental orders issued because of a global pandemic, or closure orders issued by governmental authorities to marshal public healthcare resources.

52. Had Zurich intended to exclude coverage for Government Directives to marshal public healthcare resources by slowing the spread of a pandemic, it could have done so, but pandemic-induced Government Directives have not been excluded from coverage.

53. Even the Policy's exclusion for Contamination does not provide appropriate definitions, or examples of the degree to which a virus would be excluded. This leaves the least restrictive interpretation that Zurich intended a minor instance of the actual presence of a virus particle (such as direct contamination at a covered location) as the excluded cause of loss, and not the existence of a worldwide global pandemic.

54. Had Zurich intended to include a pandemic as an excluded Cause of Loss, it could have does so clearly by including pandemic in the Contamination exclusion.

55. The Policy does not exclude a Pandemic from coverage. Moreover, the Policy does not exclude the relevant Government Directives. Therefore, the Policy would insure against these extraordinary and fortuitous losses.

56. As the result of Zurich's actions, Planet Hollywood has been damaged.

57. Planet Hollywood has retained the law firm of Byrd Campbell, P.A., and Lerner & Rowe Business Claims, LLC, agreeing to pay a reasonable fee for their services.

58. Under applicable state law, Zurich owes Planet Hollywood reasonable attorney's fees incurred enforcing its rights under the Policy.

59. All conditions precedent to bringing this action have been performed, have occurred, have been waived, or have otherwise been excused by Defendant's actions.

### G. CLAIMS FOR RELIEF

#### COUNT I
#### *Breach of Contract*

60. Planet Hollywood sues Defendant for damages that exceed $75,000.00 for breach of contract.

61. Planet Hollywood repeats the allegation set forth in paragraphs 1 through 59 above, as if fully set forth herein.

62. Zurich issued a valid and enforceable Policy to Planet Hollywood.

63. Planet Hollywood paid premiums to obtain the Policy, which remained valid and enforceable during the covered period in question.

64. During the covered period, Planet Hollywood suffered a loss of the use and function of its property, and a loss of business income.

65. The Policy obligated Zurich pay Planet Hollywood for the Time Element Loss Insured suffered and incurred by Planet Hollywood caused by the Pandemic-induced Government Directives which forced the closure of Planet Hollywood's businesses.

66. Planet Hollywood timely submitted its claim to Zurich for payment under the Policy.

67. Planet Hollywood also complied with all applicable provisions to enforce the Policy, or Zurich waived or should be estopped from enforcing any such provisions which may not have been met.

68. Zurich breached the Policy by denying coverage under the Policy and refusing to pay Planet Hollywood's claim.

69. As a direct and proximate result of Zurich's breaches of the Policy, Planet Hollywood suffered damages.

WHEREFORE, Plaintiff, Planet Hollywood, demands judgment against Defendant, Zurich, for damages, prejudgment interest, attorneys' fees, and costs.

### H. **DEMAND FOR JURY TRIAL**

Under Federal Rule of Civil Procedure 38, Planet Hollywood demands a trial by jury on all matters so triable.

Dated: March 12, 2021

Respectfully submitted by:

/s/ *Tucker H. Byrd*
**Tucker H. Byrd**
Florida Bar No. 381632
**Thomas C. Allison**
Florida Bar No. 35242
**BYRD CAMPBELL, P.A.**
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
Telephone: (407) 392-2285
Facsimile: (407) 392-2286
Primary Email: TByrd@ByrdCampbell.com
Primary Email: TAllison@ByrdCampbell.com
Secondary Email: EGarcia@ByrdCampbell.com
*Attorneys for Planet Hollywood International, Inc.*

**Frank C. Kruppenbacher**
Florida Bar No. 238597
**FRANK KRUPPENBACHER PA**
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
Telephone: (407) 246-0200
Primary Email: fklegal@hotmail.com
*Attorneys for Planet Hollywood International, Inc.*

**Alan B. Garfinkel**
Florida Bar No. 813796
**Karen M. Marcell**
Florida Bar No. 051640
**GARFINKEL LAW**
300 N. Maitland Ave.
Maitland, FL 32751-4724
Telephone: (407) 539-3900
Facsimile: (407) 407386-8485
Primary Email: agarfinkel@lovegwlaw.com
Primary Email: kmarcell@lovegwlaw.com
*Attorneys for Planet Hollywood International, Inc.*